Leigh, J.
The counsel for Dabney in this court have contended that according to Rudd's case, 1 Leach’s Cro. Ca. 115. an accomplice, who has been received by the court to give evidence against his associates, and who has fully and fairly given testimony against them, has a right to the recommendation of the court to the mercy of the executive, and a right to the pardon of the executive.
*704 In the case above referred to, lord Mansfield uses this language—“ There is, besides, a practice which does not give a legal right; and that is, where an accomplice, having made a full and fair confession of the whole truth, is in consequence thereof admitted as a witness for the crown, and his evidence is afterwards made use of to convict the other offenders. If in that case he acts fairly and openly and discovers the whole truth, though he is not entitled of right to a pardon, yet the usage, the lenity and the practice of the court is to stop the prosecution against him, he having an equitable title to the recommendation of the court to the king’s mercy.” By this opinion the right to the pardon is denied to be a legal right, and is said to be a mere equitable one. It would seem then, that even in England this right to the recommendation of the court can hardly be said to be a right secured by the common law, but is a mere favour which the crown had determined to extend to accomplices. And we are the more inclined to consider this the correct view of the question, as this doctrine of the right of an accomplice to the recommendation of the court is to be found in none of the older writers on the common law. If this be the correct opinion, then this right of an accomplice never was introduced into the laws of this state.
But if it were established that this right of an accomplice was a part of the common law, we should still be of opinion that it never was a part of the law of this state: for no accomplice can, according to the constitution of our courts, be so received to give evidence as to entitle him to this right of pardon. According to the authorities, he must make a full confession of the whole truth. And according to the same authorities, neither the committing justice nor the prosecutor, nor even the attorney general, can so receive him ; the power to receive him being given to the court alone. In England the accused is always examined by *705 the committing magistrate, who reduces this examination to writing, together with the testimony of the witnesses. In this examination an accomplice may make a full and fair confession of the whole truth, before a person authorized to receive it. But in this state the accused is never examined, and we do not see in what manner this previous confession of the whole truth is to be made. The committing magistrate and the prosecutor are unauthorized by any law to take it; nor has the court any such authority. But admitting that the court has the right, where and in what manner is the confession to be made ? Is the judge to go to the jail, or to send for the accomplice to his private room, and receive his confession in secret ? _ This would be contrary to our practice, which has always been to administer justice openly and in public. Or is the accomplice to be brought into court to make his full confession openly and publicly? This would be unjust to him : for the court may not receive him as a witness, and his confession in open court, perhaps in the presence of those who may afterwards be called upon to try him, might greatly prejudice his case. It would therefore seem that no mode is provided by our laws, in which the full confession, required of an accomplice by the practice of the courts in England before he will be permitted to give evidence against his associates, can be made. But if this difficulty were removed, no mode is pointed out by our laws, for procuring the testimony to enable the court to determine whether the accomplice ought or ought not to be received as a witness. According to the authorities cited, the admission in England of an accomplice to give evidence puts it in his power to entitle himself to a pardon. The permission, then, to give testimony is in effect the grant of the pardon. And surely the court ought to have all the evidence in the case, as well in respect to the accomplice as his associates, to enable it to decide whether it *706 would be proper, in the particular case, to exercise the power of pardoning: otherwise it would often happen that the most guilty would secure his pardon, simply by giving evidence against others who had been led into guilt by the witness himself. It is probable that in England all the evidence is before the court, which may thus have the means of ascertaining the propriety of receiving the accomplice as a witness. But in this state, according to our present mode of proceeding, the evidence never is and never can be before the court. Therefore, if the right of an accomplice to a pardon were fully established in England, we should yet deny that the same right existed here.
We think, too, that the legislature, by enacting that “ approvers shall never be admitted in any case whatsoever,” (1 Rev. Code, ch. 169. § 59. p. 614.) has manifested its disapprobation of holding out impunity to an accomplice, as an inducement to him to become a witness against his associates. Indeed, some of the judges are of opinion that this law prohibits the offering of any such indemnity to an accomplice. But others of them think that the conditional right to pardon now contended for would not have been taken away by that law, if such right had existed at the time of the enactment. A majority of the court, however, are of opinion that the act in question evinces the legislative disapprobation of the principle now contended for in, behalf of the accomplice. What was the objection to permitting an accomplice to become an approver ? Certainly, that thereby he might be tempted to screen himself by giving false testimony against others. The right to pardon now insisted on holds out the same sort of temptation, though in a less objectionable manner. And as the legislature has manifested its disapprobation of holding out such a temptation in case the witness appeared in the character of an approver, we think it may fairly be inferred that it would equally disapprove of, *707 holding out a temptation of a like kind where the witness appeared in the character of an accomplice. We think, too, that the act which prohibits the using against any person facts stated by him in his examination as a witness against another, furnishes some evidence, though perhaps not very strong evidence, that the legislature did not, at the passage of that act, regard the right, now contended for in behalf of the accomplice, as existing under our law. And we are of opinion that our law acknowledges no such right.
We are the better satisfied with this opinion, from the fact that the right has been established by no decision in our courts ; and also from the fact that it has, as we firmly believe, never before been asserted or even heard of in our courts. Indeed, we regard Byrd's case, 2 Va. Cas. 490. as a pretty strong authority against the supposed right. We willingly admit that the point directly decided in that case was, that an accomplice is a competent witness. But the opinion declares also, that the accomplice is not exonerated from punishment; that he is not entitled to a pardon in case he succeed in convicting a fellow prisoner, nor is he subjected to punishment in consequence of his failure ; that in both cases his acquittal or conviction will depend upon the evidence adduced on his own trial. We cannot believe that this broad denial of an exoneration from punishment, and of the right to pardon, would have been thus unconditionally stated, if the court had not been satisfied that the right now asserted had no existence; especially as Rudd's case appears to have been before the court. It is the daily practice to receive accomplices as witnesses; in many instances they have been put upon their trial after giving evidence against their associates, and in some instances they have been convicted : yet in no one instance have counsel claimed, or the court extended to the witness, the right now asserted. How is this to be accounted for ? Not from *708 ignorance in the profession, (for Rudd’s case has been for a long time generally known,) but from the universal opinion of the bench and bar that no such right existed. And w.e cannot readily admit that the whole profession has been, for such a length of time, in error in respect to a question which so frequently required their consideration.
It is said, that policy requires that this right should be secured to accomplices. We doubt this. We readily admit that accomplices would more frequently consent to give testimony against their associates, if by doing so they would secure a pardon for themselves. But even now, when the right claimed for them is denied, they are not very often believed by juries; and we think that if the right claimed were admitted, they would rarely be credited at all.
We have not considered, and we mean to express no opinion whatever on the general power of the courts of this commonwealth to recommend persons accused to the mercy of the executive. All we mean to say is, that an accomplice has no right to demand such a recommendation, merely because he has given evidence on the part of the commonwealth, fully, candidly and impartially.
Duncan, J.
The majority of the court not resting its decision on the same precise grounds on which some of the judges are inclined to place it, I shall very briefly assign the grounds of my opinion.
The point on which all the questions adjourned in this case turn, is, whether an accomplice, who gives testimony against his associates fairly and openly, has a right to demand from the court in which he is tried for the same offence, a recommendation to the executive for a pardon ; and whether the doctrine of the english courts upon this subject, as expounded in Rudd’s case, is in force in this state.
*709 Rudd’s case was decided in 1775, and it was there for the first time distinctly adjudged, that an accomplice giving testimony fully and fairly against his associates in crime has an equitable right to a pardon, and that the court will recommend him to mercy, and will stay the proceedings against him to enable him to apply for a pardon. The doctrine, as settled in Rtidd’s case, undoubtedly sprang out of the ancient law of approvement, and was merely a modification thereof. That law, as it anciently existed, had, long before the decision of Rudd’s case, become obsolete. Sir Matthew Hale, a century before, had stated (2 Hale’s P. C. 226.) that “ the admitting of approvers had long been disused.” But in his time accomplices were admitted as witnesses, and it became a part of the policy of that country, in order to aid in the discovery and punishment of crimes, to encourage accomplices to give evidence against their fellows, by holding out to them the promise of a pardon if they made full and fair disclosures ; and the english courts, in furtherance of this policy, so moulded the common law doctrine of approvement, as to get rid of some of the objectionable features of the law as anciently practised and understood, and at the same time to carry out the public policy. Such seems to me to have been the foundation of the decision in Rudd’s case.
Thus the law stood in England, and of course in the colonies, until the revolution. Soon thereafter, in 1789, the legislature of Virginia, with a knowledge that the ancient law of approvement had been obsolete for more than a century, and with a knowledge of its modification by the english courts in Rudd’s case, passed a statute declaring that “approvers shall never be admitted in any case whatsoever.” Now, as the ancient law of approvers, as technically understood, had long been obsolete, there was no necessity for the legislature to repeal it; but as Rudd’s case had been but recently *710 decided, modifying the law of ápprovement, it is clear *-° my m'nd that the legislature had a special view to that modification of it by the english courts; and this seems to me to be the more probable, from the fact that the reason assigned by sir Matthew Hale for the law of approvement as anciently practised having become obsolete, applied with almost equal strength to the modification of the rule as settled in Rudd's case. The reason assigned by him is, that “ more mischief hath come to good men by these kinds of approvements, by false accusations of desperate villains, than benefit to the public by the discovery and convicting of real offenders.” The only difference between the ancient law of approvement and its modern modification is, that in the former the approver must confess his crime, and if he fails to effect a conviction of his confederate, he is to be punished, but if there is a conviction, then he is entitled to a pardon unconditionally. The modern doctrine does not require that the accomplice shall confess his guilt, or that his associate shall be convicted ; but if he gives his testimony fully and fairly, the court is pledged to recommend, and the executive to grant, a pardon. Can there be any material difference in the degree of evil that would be likely to arise “to good men by false accusations of desperate villains ?” In either case, the price held out to the accomplice for his evidence is a pardon for his own crime: in either case, he is an approver. So, I infer, the legislature supposed. And such was undoubtedly the interpretation by the courts of the country, of the statute passed in 1789, abrogating approvements; as is proved by the opinion of the elder judge Tucker, contained in a note to 4 Tucker’s Blackstone p. 331. This able jurist states expressly, that the Virginian statute repealing the law of approvement was understood to exclude the adoption of the principle settled by the english courts in .Rudd's case; although he seems to regret that accom *711 plices in this country were not placed upon the footing of accomplices in England. And I think it may be fairly inferred that the suggestion of judge Tucker, in his note referred to, gave rise to the passage of the subsequent statute of 1811, 1 Rev. Code, ch. 131. § 6. p. 517. in which the legislature (for the purpose, no doubt, of holding out to accomplices an inducement to give evidence against their associates) provided that the testimony of a witness should not be used as evidence in any trial against himself. If the law of approvement, as modified in Rudd's case, were in force, then it became unnecessary to hold out to accomplices any such inducements as were held out by the statute of 1811; for the principle of Rudd's case placed them in a better situation ; they became entitled to a pardon under the implied faith of the government, whilst under the statute they might be tried and convicted without any claim to pardon. And we find that the general court, in Byrd's case, decided in 1826, expressly say (although in this respect the opinion was obiter) that the accomplice who gives evidence against his associates is not entitled to a pardon. In New York, it is true, it has been decided in Whipple's case, 9 Cowen 707. that the law of England as settled in Rudd's case was the law of that state: and under different circumstances that decision ought to have great weight here. But in New York there was no statute such as that passed in Virginia in 1789, abrogating approvements, nor any such as that passed in 1811. The reason assigned by the court of New York in Whipple's case, while it was in strict conformity with the principles of the common law of approvements as modified by the english courts in Rudd's case, is wholly inapplicable to this state.
I am of opinion, therefore, that although the judge who shall try the prisoner in this case may recommend him to the executive for a pardon, it is not his official duty to do so ; that it is only an act of favour, which *712 the judge, the jury, or any person may extend. I am of opinion, also, that the court ought not to continue the prisoner’s case, merely to enable him to apply for a , pardon.